UNITED STATES DISTRICT COURT FOR THE
STATE OF ALASKA
AT FAIRBANKS

| | |
|---|---|
| KYLE EYRE as Personal Representative of the CODY EYRE,<br><br>  Plaintiff,<br><br>  v.<br><br>THE CITY OF FAIRBANKS, a municipal corporation, RICHARD SWEET, TYLER LARIMER, the STATE OF ALASKA, ELONDRE JOHNSON, NATHANIEL JOHNSON, JAMES THOMAS III, CHRISTINE JOSLIN, and JOHN DOES 1 - 10,<br><br>  Defendants. | NO.<br><br>COMPLAINT<br><br>(JURY DEMAND) |

Plaintiff, by and through his attorneys, hereby alleges as follows:

**PRELIMINARY STATEMENT**

1. On December 24, 2017, 22-year-old Cody Dalton Eyre was shot 12 times in a flurry of semi-automatic rifle, pistol and shotgun fire by officers of the City of Fairbanks Police Department and Troopers with the State of Alaska Department of Public State. The shooting took place in the dark, on

COMPLAINT - 1

a snowy cul-de-sac more than 200 yards from the nearest residential area where Cody Eyre presented no immediate threat of harm to anyone other than himself. Instead of responding appropriately to Cody who was depressed, intoxicated and walking alone along Farmers Loop Road, the defendants overreacted, surrounding him, shining lights in his eyes, and by placing themselves close to him when he was emotionally distraught, guaranteed that he would die if he continued to act in an emotionally unstable way.

As a result of the wrongful conduct of the named defendants, the Estate of Cody Eyre brings this civil action against the City of Fairbanks and individual police officers employed by the Fairbanks Police Department, and the State of Alaska and individual troopers employed by the State of Alaska, for violating Cody Eyre's civil and constitutional rights by subjecting him to unreasonable and excessive force on or about December 24, 2017 and causing his wrongful death.

## JURISDICTION AND VENUE

2. This Court has original jurisdiction over the plaintiff's civil rights claims under 42 U.S.C. § 1983, pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). This Court has supplemental jurisdiction over the plaintiff's related state law claims pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because all of the events that support the plaintiff's allegations occurred in this judicial district and because the defendants reside in this judicial district.

## PARTIES

4. Plaintiff, Kyle Eyre, is the personal representative of the Estate of Cody Dalton Eyre and is authorized to bring this Complaint to seek redress for the injuries and damages sustained as a result of the conduct alleged in this complaint.

COMPLAINT - 2

5. Defendant City of Fairbanks is a governmental entity and a municipal corporation operating in this judicial district. Among its departments is the Fairbanks Police Department, which is responsible for traditional law enforcement activities within the City of Fairbanks. It is also responsible for the hiring, training and supervision of its police officers, more specifically, for defendants Richard Sweet and Tyler Larimer.

6. Defendant Richard Sweet is an individual residing in this judicial district. At all times relevant hereto, Defendant Richard Sweet was a police officer with the Fairbanks Police Department, an employee of the City of Fairbanks, and was acting within the course and scope of his employment. All acts committed by Defendant Richard Sweet were done under color of the laws of the State of Alaska and under the authority of his position as a police officer with the Fairbanks Police Department.

7. Defendant Tyler Larimer is an individual residing in this judicial district. At all times relevant hereto, Defendant Tyler Larimer was a police officer with the Fairbanks Police Department, an employee of the City of Fairbanks, and was acting within the course and scope of his employment. All acts committed by Defendant Tyler Larimer were done under color of the laws of the State of Alaska and under the authority of his position as a police officer with the Fairbanks Police Department.

8. Defendant State of Alaska is a governmental entity and through its Department of Public Safety provides traditional law enforcement activities within the North Star Borough. It is also responsible for the hiring, training and supervision of its troopers, more specifically, for defendants Ron Dupee, Elondre Johnson, Nathaniel Johnson, James Thomas III and Christine Joslin.

9. Defendant Ron Dupree is an individual residing in this judicial district. At all times relevant hereto, Defendant Ron Dupree was a trooper with the Alaska State Troopers, an employee of the State of Alaska, and was acting within the course and scope of his employment. All acts committed

COMPLAINT - 3

by Defendant Dupee were done under color of the laws of the State of Alaska and under the authority of his position as a trooper with the Alaska State Troopers.

10. Defendant Elondre Johnson is an individual residing in this judicial district. At all times relevant hereto, Defendant Elondre Johnson was a trooper with the Alaska State Troopers, an employee of the State of Alaska, and was acting within the course and scope of her employment. All acts committed by Defendant Elondre Johnson were done under color of the laws of the State of Alaska and under the authority of her position as a trooper with the Alaska State Troopers.

11. Defendant Nathaniel Johnson is an individual residing in this judicial district. At all times relevant hereto, Defendant Nathaniel Johnson was a trooper with the Alaska State Troopers, an employee of the State of Alaska, and was acting within the course and scope of his employment. All acts committed by Defendant Nathaniel Johnson were done under color of the laws of the State of Alaska and under the authority of his position as a trooper with the Alaska State Troopers.

12. Defendant James Thomas III is an individual residing in this judicial district. At all times relevant hereto, Defendant James Thomas III was a trooper with the Alaska State Troopers, an employee of the State of Alaska, and was acting within the course and scope of his employment. All acts committed by Defendant James Thomas III were done under color of the laws of the State of Alaska and under the authority of his position as a trooper with the Alaska State Troopers.

13. Defendant Christine Joslin is an individual residing in this judicial district. At all times relevant hereto, Defendant Christine Joslin was a trooper with the Alaska State Troopers, an employee of the State of Alaska, and was acting within the course and scope of her employment. All acts committed by Defendant Christine Joslin were done under color of the laws of the State of Alaska and under the authority of her position as a trooper with the Alaska State Troopers.

14. Plaintiff anticipates the possibility that there will be other individual defendants, not currently known by name, who were employed by and/or were agents of the City of Fairbanks and/or the State of Alaska Department of Public Safety and who bear liability for the allegations herein. Because plaintiff does not currently know the names of all such individuals, they are identified in this complaint by the pseudonyms John Does 1-10, and plaintiff may seek to amend this complaint to add them as individual defendants as discovery and investigation progress.

## FACTUAL ALLEGATIONS

22. On December 24, 2019, at 6:21 pm, the Alaska State Troopers in Fairbanks, Alaska receive a call that Cody Eyre is on Facebook Live stating that he is going to commit suicide. The Troopers are informed that Eyre is intoxicated, there is only one bullet in the gun and that Cody's father has been called in Delta Junction and is "on his way".

23. Initially, the Troopers attempt to call Cody. When he doesn't respond, they assume there is no need to take further action as he has committed no crime and is at his residence. They do not call mental health professionals or make any attempt to have someone trained in dealing with emotional crises to respond to Cody.

24. Subsequently, at 7:03 pm, 911 Dispatch receives a call from Cody's mother, Magdalena Eyre, asking for a welfare check[1] to "pick up" Cody because he is drinking, has just broken up with his girlfriend and is walking on the Farmers Loop sidewalk with his gun in his holster. She reports that she and her daughter are following behind Cody in her Lincoln Navigator SUV.

25. Dispatch tells Trooper Elondre Johnson about the 911 call from Cody's mother. Trooper does not consider the situation to be urgent.

---

[1] A welfare check is a common procedure in which a police officer goes to a residence or other location to check on the welfare of an individual. *See fn. 4, Much v. Alaska Police Standards Council,* S-16225 (April 11, 2018).

COMPLAINT - 5

26. When she learns that Cody is now walking on Farmer's Loop Road, "intoxicated, suicidal, pedestrian on the roadway", she determined AST should respond. She responds as does Trooper Joslin Thomas and Trooper Nate Johnson. Fairbanks Police officers Richard Sweet and Tyler Larimer also respond.

27. When he sees police officers, Cody runs away from them, at times holding his gun to his head and shouting profanities. He is clearly emotionally agitated. He threatens no one. Again, no efforts are made to contact any mental health professionals to assist in deescalating Cody.

28. Cody goes down a small road that ends in a cul-de-sac next to the Baptist Church and near the LDS Church. Neither church is open. No one else is nearby. The closest residential area is approximately 200 yards away (two football fields) and to get there he would have to go across a field covered in deep snow.

28. Cody threatens to shoot himself if the Troopers and police officers get any closer. He is clearly emotionally distraught and physically the only people are at risk are himself or the troopers and officers who close in on him. Again, no efforts are made to contact any mental health professionals to assist in deescalating Cody. Despite his mother and sister being a few hundred yards away, no effort is made to have one of them talk to him. No effort is made to bring a minister or pastor.

29. Instead, the troopers and officers press forward in surrounding Cody, handguns and long-guns drawn (including a riot shotgun). Cody is more desperate, more emotional and continues to threaten to kill himself. As of this time, he is committing no crime and is in lawful possession of a firearm under Alaska law.

30. Surrounded by at least six officers with guns pointing him, severely depressed and intoxicated, the troopers and officers who have placed themselves directly at risk of harm with a young man who was otherwise at no immediate risk to anyone but himself, believe that Cody has not directed

COMPLAINT - 6

his pistol with one bullet towards one or many of them. They open fire. Cody is shot ten times in the lower body. A bullet grazes his right arm. He is fatally shot in the back of the head.

31. Prior to shooting Cody, at no time did the troopers or police officers consult with a mental health professional, minister or one of Cody's immediate family members who were present.

32. Prior to shooting Cody, did the troopers or police officers attempt to deescalate the situation by pulling back, setting up a perimeter at a distance that kept them safe but allowing communication with Cody to allow him time to not feel pressured or threatened to act in a fashion that could cause them to shoot him.

33. Prior to seconds before he was shot, Cody had committed no crime, endangered no one but himself, and but for the police officers escalating the situation by moving closer towards him on that isolated cul-de-sac, created no immediate risk of harm to anyone.

34. The defendants, and each of them individually and collectively, failed to properly be trained, supervised and respond to the emotional crisis that Cody was suffering on December 24, 2017. Even though Cody posed no immediate threat to anyone before surrounding him on the snowy cul-de-sac, the defendants failed to take reasonable steps to consult or bring in someone with a way to deescalate the situation. Instead, there only response was that if Cody didn't stop threatening to shoot himself, they would shoot him.

35. Defendants, and each of them individually and collectively, despite having many alternatives that posed less risk to themselves and Cody, chose instead to confront a depressed and intoxicated young man whose threats had only been to harm himself. In escalating the situation, surrounding him, threatening to shoot him if he didn't lower the gun he was saying he would use to kill himself, they created the exact risk of harm they should and could have avoided.

COMPLAINT - 7

36. Throughout their continued encounter with Cody, the individual defendants, individually and collectively, used excessive and unreasonable force against Cody and/or failed to intervene while such force was used by their fellow officers. Defendants used this force despite their recognition that Cody was experiencing a mental health crisis and was intoxicated. They used this force despite the fact that his mother and sister were nearby, and his father was on his way. They used this force despite the fact that Cody was surrounded on an isolated cul-de-sac 200 yards away from the nearest residential area. The force used against Cody was excessive, unreasonable, unwarranted by the circumstances, and out of proportion with a legitimate law enforcement objective. It was foreseeable that the use of such force would put Codey at risk of serious injury or death.

37. As a result of their conduct including excessive force used by the individual defendants, Cody suffered severe pain and distress and was killed. These injuries were caused by the defendants' failure to respond appropriately and reasonably to his mental health crisis and their ultimate use of excessive force against him. The Estate of Cody Eyre has been damaged in an amount to be proven at trial. His damages include, *inter alia*, pre-death pain and suffering, and wrongful death damages consistent with Alaska law.

38. Throughout their encounter with Cody, the individual defendants acted intentionally, knowingly, maliciously, and/or recklessly in violation of his well-established constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.

39. Defendant City of Fairbanks is subject to municipal liability for the failure to properly train and supervise its officers and for their unconstitutional use of excessive and unreasonable force described herein. The actions of the individual defendants as alleged herein were carried out in accordance with the official policies, procedures, customs, and practices of the City of Fairbanks. The City of Fairbanks failed to adequately train and/or supervise its personnel with regard to responding to

COMPLAINT - 8

emotional crises by individuals and as to the use of force described in this complaint. The City of Fairbanks engaged in and permitted to exist a pattern or practice of unconstitutional use of force like the force described in this complaint and in failing to properly train its officers on how to deal with emotional crises. The City of Fairbanks also failed to adequately investigate the unconstitutional use of force described herein and/or ratified the unconstitutional use of force by its employees and/or agents.

40. Defendant State of Alaska is subject to liability for the failure to properly train and supervise its troopers and for their unconstitutional use of excessive and unreasonable force described herein. The actions of the individual defendants as alleged herein were carried out in accordance with the official policies, procedures, customs, and practices of the State of Alaska. The State of Alaska failed to adequately train and/or supervise its personnel with regard to responding to emotional crises by individuals and as to the use of force described in this complaint. The State of Alaska engaged in and permitted to exist a pattern or practice of unconstitutional use of force like the force described in this complaint and in failing to properly train its officers on how to deal with emotional crises. The State of Alaska also failed to adequately investigate the unconstitutional use of force described herein and/or ratified the unconstitutional use of force by its employees and/or agents.

## CLAIMS

### Common Law Negligence

41. Defendants, individually and collectively, had a duty to use ordinary care to avoid unreasonably escalating the encounter to the use of deadly force.

42. Defendants breached this duty in the following but non-inclusive ways:

a. Failure to call professionals to the scene who had experience with mental health crises, including mental health counselors, trained negotiators, clergy and/or ministers, all of whom could have communicated with Cody and worked to deescalate the situation;

b. Failure to establish a cordon around Cody at a distance to limited the risk of harm to be only by Cody to himself and to wait him out – allowing him to either calm down, pass-out, fall asleep, or otherwise, reduce any risk that he might pose to others;

c. Failure to establish a cordon and allow his own family members who were nearby (and father on the way) to talk with Cody and attempt to deescalate the situation;

d. Take ordinary steps that would not cause a depressed and intoxicated young man suffering a mental health crisis, meaning he was unable of making rational decisions, to believe there was no alternative other than to surrender at gunpoint or kill himself.

43. The defendants, and each of them, breach of ordinary care in exercising their duties as law enforcement officers, was a substantial factor in causing pre-death pain and suffering and the wrongful death of Cody Eyre.

44. As a result of that negligence, the Estate of Cody Eyre has statutory survival and wrongful death claims.

**Negligent Failure to Train and Supervise**

45. It is foreseeable that troopers and police officers in the North Star Borough will deal with individuals suffering emotional crises.

46. Those emotional crises may be as the result of long-term mental health issues, short-term mental health problems, intoxication, drug usage, or other disabilities.

47. Because it is foreseeable, defendants, the City of Fairbanks and the State of Alaska, have a duty to train and supervise their employees such that they do not escalate situations which

COMPLAINT - 10

require mental health interventions into public safety crises where the troopers and officers place themselves at risk of harm and then shoot the individual suffering the emotional crises.

48. Defendants, the City of Fairbanks and the State of Alaska, were negligent in failing to properly train and supervise their employees to reasonably respond to the emotional crisis that Cody Eyre was suffering on Christmas Eve, 2017.

49. Had the individual troopers and officers been properly trained and supervised, Cody Eyre, would not have been shot and killed.

50. The failure to properly train and supervise those troopers and officers was a substantial factor in causing the death of Cody Eyre.

**Excessive Force** (42 U.S.C. § 1983)

53. As a result of the allegations contained herein, Defendants are liable to the Estate of Cody Eyre under 42 U.S.C. § 1983 for violating Cody Eyre's constitutional rights by subjecting him to excessive and unreasonable force.

**Violation of the ADA – Failure to Accommodate**

54. Title II of the ADA states, in pertinent part:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or subjected to discrimination by any such entity. 42 U.S.C. § 12132. 142. Under the ADA, a "public entity" includes state and local governments, their agencies, and their instrumentalities. 42 U.S.C. § 12131(1).

55. At all relevant times, Within the meaning of Title II of the ADA, Defendant City of Fairbanks was, and currently, is a "public entity."

56. Under the ADA, the term "disability" includes physical and mental impairments that substantially limit one or more major life activities. 42 U.S.C. § 12102(2). A "'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications

COMPLAINT - 11

to rules, policies, or practices … meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

57. At all relevant times, within the meaning of Title II of the ADA, Cody was a "qualified individual with a disability." Cody had an impairment that substantially limited major life activities. As a resident of Fairbanks, he was qualified to participate in the programs, services, and activities of the City of Fairbanks, including but not limited to receiving emergency services and other appropriate assistance from EMTs and police officers.

58. At all relevant times, Defendants City of Fairbanks and the State of Alaska knew, or should have known, that Cody suffered from mental illness and, therefore, had a disability for the purposes of the ADA.

59. Defendants City of Fairbanks and the State of Alaska excluded Cody from participation in or denied him the benefits of a public service, or otherwise discriminated against Terrence, on the basis of his disability, by failing to make reasonable accommodations to address his mental illness.

60. Acting as employees of Defendant City of Fairbanks, and in accordance with a policy or practice, Defendants Richard Sweet and Tyler Larimer, and Defendant State of Alaska, Defendants Elondre Johnson, Nathaniel Johnson, James Thomas III and Christine Joslin, failed to make reasonable accommodations and provide appropriate medical assistance to Cody who suffered from a mental health disability, and instead, resorted to deadly violence.

61. As a result of the failure of Defendant City of Fairbanks and the State of Alaska to provide reasonable accommodations, in violation of the ADA, Cody suffered damages.

COMPLAINT - 12

**Violation of the ADA – Failure to Train**

62. Defendants City of Fairbanks and State of Alaska excluded Codyu from participation in or denied him the benefits of a public service or otherwise discriminated against Terrence, on the basis of his disability, by failing to train its employees to make reasonable accommodations to serve persons with mental health disabilities.

63. Had Defendant City of Fairbanks trained its police officers and Defendant State of Alaska train its troopers to make reasonable accommodations to provide appropriate medical assistance rather than resort to deadly violence in situations involving persons with mental health disabilities, Cody would not have been unlawfully seized, shot, and killed.

64. As a result of the failure of Defendants City of Fairbanks and State of Alaska to train their employees, in violation of the ADA, Cody suffered damages.

**Rehabilitation Act**

65. Section 504 of the Rehabilitation Act provides, in pertinent part:

> No otherwise qualified individual with a disability in the United States … shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or 28 be subjected to discrimination under any program or activity receiving federal financial assistance[.] 29 U.S.C. § 794(a).

66. At all relevant times, Defendants City of Fairbanks and State of Alaska were, and are currently, a recipient of federal financial assistance within the meaning of Section 504 of the Rehabilitation Act, and that financial assistance constitutes a "program or activity" that Defendants City of Fairbanks and State of Alaska provided and provides. 29 U.S.C. § 794(b).

67. Defendants City of Fairbanks and State of Alaska excluded Cody from participation in or denied him the benefits of a public service, or otherwise discriminated against Cody, on the basis of his disability.

68. Defendants City of Fairbanks and State of Alaska knew that Cody had a disability and still failed to reasonably accommodate his disability and as a result he was subjected to discrimination, unnecessarily seized, and unreasonably killed.

69. As a result of the failure of employees of the Defendants City of Fairbanks and State of Alaska to make reasonable accommodations, in violation of the Rehabilitation Act, Cody suffered damages.

**Wrongful Death – Individual Liability**

70. In answering and coordinating the response to Magdalena Eyre's 911 call for a "welfare check", Defendants Richard Sweet and Tyler Larimer, and Defendant State of Alaska, Defendants Elondre Johnson, Nathaniel Johnson, James Thomas III and Christine Joslin owed a duty of care to Cody.

71. By unjustifiably designating Cody as someone who was violent and a risk to others as opposed to someone who was having a mental health crisis and only a risk to himself, Defendants' Richard Sweet and Tyler Larimer, and Defendant State of Alaska, Defendants Elondre Johnson, Nathaniel Johnson, James Thomas III and Christine Joslin Michalowski, breached their duty of care to Cody.

72. By shooting Cody multiple times and killing him, Defendants Richard Sweet and Tyler Larimer, and Defendant State of Alaska, Defendants Elondre Johnson, Nathaniel Johnson, James Thomas III and Christine Joslin, jointly and in concert, engaged in conduct that was intentional, reckless, grossly negligent, or negligent.

73. By failing to intervene and prevent each of the other defendants from using unreasonable and excessive force against Cody, Defendants Richard Sweet and Tyler Larimer, and

Defendant State of Alaska, Defendants Elondre Johnson, Nathaniel Johnson, James Thomas III and Christine Joslin, engaged in conduct that was intentional, reckless, grossly negligent, or negligent.

74. Defendants Richard Sweet and Tyler Larimer, and Defendant State of Alaska, Defendants Elondre Johnson, Nathaniel Johnson, James Thomas III and Christine Joslin's conduct set in motion a series of events that culminated in Cody's death.

75. Defendants Richard Sweet and Tyler Larimer, and Defendant State of Alaska, Defendants Elondre Johnson, Nathaniel Johnson, James Thomas III and Christine Joslin's conduct were a substantial factor in causing Cody's death.

76. Defendants Richard Sweet and Tyler Larimer, and Defendant State of Alaska, Defendants Elondre Johnson, Nathaniel Johnson, James Thomas III and Christine Joslin failure to intervene, in violation of their duty of care that they owed to Cody, proximately caused Cody's death.

77. As a result of Defendants Richard Sweet and Tyler Larimer, and Defendant State of Alaska, Defendants Elondre Johnson, Nathaniel Johnson, James Thomas III and Christine Joslin's negligence, the Estate of Cody Eyre is entitled to damages.

**Wrongful Death – Vicarious Liability**

78. At all relevant times, Defendants Richard Sweet and Tyler Larimer acted as employees of Defendant City of Fairbanks.

79. At all relevant times, Defendants Elondre Johnson, Nathaniel Johnson, James Thomas III and Christine Joslin acted as employees of Defendant State of Alaska.

80 Because Defendants Richard Sweet and Tyler Larimer, and Defendant State of Alaska, Defendants Elondre Johnson, Nathaniel Johnson, James Thomas III and Christine Joslin's negligence were a substantial factor in causing Cody's death, Defendant City of Fairbanks and Defendant State of Alaska are vicariously liable for his wrongful death.

81.     As a result of the negligence by Defendants Richard Sweet and Tyler Larimer in the course of their employment for Defendant City of Fairbanks, and Defendants Elondre Johnson, Nathaniel Johnson, James Thomas III and Christine Joslin in the course and scope of their employment for the State of Alaska, the Estate of Cody Eyre is entitled to damages.

**Assault and Battery**

82.     As a result of the allegations contained herein, the individual Defendants are liable to the Estate of Cody Eyre for common law torts under Alaska law, including assault and battery.

**JURY DEMAND**

83.     Plaintiff demands a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, the plaintiff prays that the Court award:

A.     Compensatory, consequential and/or nominal damages in an amount to be proven at trial, in amounts sufficient to compensate Cody Eyre's pre-death pain and suffering and wrongful death;

B.     Punitive damages against the individual defendants, in an amount to be proven at trial;

C.     Reasonable attorneys' fees, costs, and prejudgment interest incurred in pursuing this action as provided for in 42 U.S.C. § 1988; and

D.     Any such other relief that this Court deems just and equitable under the circumstances of this case.

DATED this 29th day of November, 2019.

                            CHOATE LAW FIRM LLC
                            Attorneys for the Estate of Cody Eyre

                            *s/Mark Choate*
                            Mark Choate, 8011070